## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## (TAMPA DIVISION)

JILL WOLHUTER, AN INDIVIDUAL, AND
CHRISTINE HERENDEEN, TRUSTEE FOR
THE ESTATE OF JILL WOLHUTER,

       Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC, a
foreign Limited Liability Company, and BANK OF
AMERICA, N.A., a National Association,

       Defendants.

Case No.:  8:15-cv-00552-MSS

_____/

### DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC
### MOTION TO DISMISS COMPLAINT

Defendant, CARRINGTON MORTGAGE SERVICES, LLC ("Carrington" and/or "Defendant"), by and through the undersigned counsel, and in accordance with Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss the Complaint and Incorporated Memorandum of Law (the "Motion"), and in support states as follows[1]:

### I.  PRELIMINARY STATEMENT

Plaintiff, Jill Wolhuter ("Wolhuter"), is the mortgagor of a mortgage, which was previously serviced by Defendant, Bank of America, N.A. ("BANA"), and currently serviced by Carrington.  Plaintiff, Christine Herendeen, Trustee for the Estate of Jill Wolhuter ("Herendeen"), is the real party in interest in this lawsuit by virtue of Wolhuter's Chapter 7

---

[1] Carrington incorporates by reference all of the arguments and authorities contained in the Motion to Dismiss filed by co-defendant, Bank of America, in this case.  ECF No. 6.

1079293.1

Bankruptcy filing. Wolhuter[2], after defaulting on her residential mortgage loan, is currently a Defendant in a mortgage foreclosure action filed in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida, on August 10, 2012 (the "Foreclosure Action"[3]). BANA, as the prior servicer of the mortgage loan, initiated the Foreclosure Action against Wolhuter.  Wolhuter retained counsel to defend the Foreclosure Action and said counsel filed a Notice of Appearance in the Foreclosure Action on September 12, 2012 (the "Notice of Appearance").

Despite not having finality to the Foreclosure Action, Plaintiffs initiated the instant Complaint against Defendants, alleging six (6) Counts for alleged violations of the Florida Consumer Collection Practices Act (the "FCCPA"), the Fair Debt Collection Practices Act (the "FDCPA"), and the Telephone Consumer Protection Act (the "TCPA").  Each claim against Defendants is predicated on the Notice of Appearance that Wolhuter's counsel filed in the Foreclosure Action.  Specifically, it is the Plaintiffs' position herein that the Defendants violated the FCCPA, FDCPA, and TCPA by communicating directly with Wolhuter after her counsel filed the Notice of Appearance in the Foreclosure Action.  See Compl., ¶24.  In addition to other reasons that warrant dismissal as will be discussed below, the entire action must be dismissed with prejudice as this Court in Wright v. Select Portfolio Servicing, Inc., recently held that a Notice of Appearance filed in a Foreclosure Action is insufficient knowledge to place a debt collector on notice that the borrower is represented by counsel with respect to the debt.  No. 8:14-CV-2298-T-30TGW 2015 WL 419618 at *5 (M.D. Fla. Feb. 2, 2015).

---

[2] The Foreclosure Action was only instituted against Wolhuter, individually; and not against Herendeen.
[3] Bank of America, N.A. v. Jill Wolhuter, et. al., Case No. 2012-CA-009874.

1079293.1

## II. PROCEDURAL BACKGROUND

On January 14, 2015, this action was filed by the Plaintiffs in the Circuit Court of Pinellas County, Florida. On March 11, 2015, the action was timely removed by Defendant Carrington. ECF No. 1. On April 1, 2015, this Court entered an Order providing Defendant Carrington until April 10, 2015, to file its response to the Complaint. ECF No. 13.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), the factual allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." Id. at 555. In making this plausibility determination, a court must accept the factual allegations as true; however, this "tenet. . . is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Once an exhibit is attached to a pleading, it "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court's analysis is 'limited primarily to the face of the complaint and the attachments thereto.'" Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997). A court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In addition, this Court may take judicial notice of the documents filed in the state court Foreclosure Action. See, e.g.,

1079293.1

Popescu v. JPMorgan Chase, N.A., No.12-80851-CIF 2013 WL 5535867 at *1 (S.D. Fla. Oct. 7, 2013).

### IV. ARGUMENT

#### A.      Counts I, II, and III – Violations of the FCCPA and the FDCPA

Plaintiffs allege various violations of the FCCPA and the FDCPA in Counts I, II, and II of their Complaint.[4]  To support the alleged violations, Plaintiffs allege the following conduct on behalf of Defendant[5]:  (1) Five (5) mortgage statements sent to Wolhuter after the Notice of Appearance was filed; (2) From March 2013 to present, 2 calls per week were made to Wolhuter despite the Notice of Appearance filed in the Foreclosure Action; and (3) Defendant called Wolhuter's mother regarding the debt.  See Compl. ¶¶ 57-61, 66-68, and 72-74.  As none of this conduct can support the alleged violations, each Count should be dismissed with prejudice.

1.      Counts I, II, and III fail to state a cause of action as to the Mortgage Statements

Part of Counts I, II, and III are based on the allegation that Defendant communicated with Plaintiffs by sending five (5) monthly mortgage statements (collectively the "Mortgage Statements") in an attempt to collect a consumer debt after receiving notice that Plaintiff Wolhuter was represented by counsel.  For the reasons described below, Defendant maintains that the Mortgage Statements cannot form the basis of an FCCPA and/or FDCPA violation, and therefore the same must be dismissed with prejudice.

---

[4] Count I alleges a violation of Fla. Stat. § 559.72(7).  Count II alleges a violation of Fla. Stat. § 559.72(18).  Count III alleges a violation of 15 U.S.C. § 1692c(a)(2).  However, as the specific conduct alleged is the same for each Count, all Counts will be addressed together in this section for ease of argument.

[5] While Paragraphs 37, 39, and 40 reference other letters allegedly sent by Carrington to Wolhuter, the Plaintiffs seemingly abandon any claims related to those letters as they fail to specifically incorporate these letters into the specific allegations contained in Counts I, II, and/or III, and therefore the same are not individually addressed in this Motion. To the extent the Plaintiffs file a Response to this Motion and argue the letters are violations, the Defendant reserves the right to file a Reply and argue the merits of the letters as it should be noted that many of the same arguments that will be discussed in this section will apply to such letters, including that they were sent after the Notice of Appearance and therefore not a violation, as well as the letters being for informational purposes only.

1079293.1

a. *The Notice of Appearance is Insufficient to Place Defendant on Notice that Plaintiff was Represented by Counsel*

As the Counts relate to the Mortgage Statements, the same fail as a matter of law as the Notice of Appearance in the Foreclosure Action was insufficient to adequately advise Defendant to send the monthly mortgage statements to Wolhuter's counsel.   See Wright, 2015 WL 419618 at *5 (M.D. Fla. Feb. 2, 2015).  In Wright, the borrowers alleged that a third-party debt collector violated the FCCPA and the FDCPA by sending mortgage statements directly to the borrowers after the borrowers' counsel filed a Notice of Appearance in a foreclosure action.  Id.  This Court held that the Notice of Appearance "was insufficient as a matter of law to place [Defendant] on notice that the [borrowers] were represented by counsel with respect to their debt[,]" and dismissed with prejudice the claims that the debt collector violated the FCCPA and the FDCPA by sending the monthly mortgage statements directly to the borrowers after the Notice of Appearance was filed.  Id.  As the instant case is identical to the facts in Wright, Counts I, II, and III based on the Mortgage Statements should be dismissed with prejudice.

b. *The CFPB Explicitly Precluded Periodic Statements from FDCPA/FCCPA Violations*

Counts I, II, and III fail to state a cause of action related to the Mortgage Statements as the Consumer Financial Protection Bureau (the "CFPB") has explicitly stated that periodic statements conforming to federal guidelines cannot constitute FDCPA violations. Thus, these claims are deficient as a matter of law, and should therefore be dismissed.

It has become increasingly troublesome for loan servicers to comply with the federal regulations under RESPA and the Truth in Lending Act ("TILA"), while also respecting the rights of consumers under the FDCPA (and in turn the FCCPA). See  ConsumerFinance.gov. As a response to these issues, the CFPB issued a bulletin on October 15, 2013, titled "Implementation Guidance for Certain Mortgage Servicing Rules" (the "Bulletin"), in which the

1079293.1

CFPB explicitly states that a periodic statement conforming to federal regulations sent by a loan servicer to a consumer is not a FDCPA violation.

Congress established the CFPB through the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act). See ConsumerFinance.gov. The CFPB is responsible for consumer protection in the financial sector, and maintains binding authority within its jurisdiction, which includes banks, credit unions, securities firms, payday lenders, mortgage-servicing operations, foreclosure relief services, debt collectors and other financial companies operating in the United States. Among these responsibilities, the CFPB has the duty of providing rules to clarify any discrepancies between legislation and the practices within the financial sector. The Bulletin was created to clear up any ambiguities within the statutorily-mandated servicing requirements outlined by the 2013 RESPA and TILA Servicing Final Rules[6] (the "Final Rules") as they relate to the FDCPA and the Dodd-Frank Act, weighing a servicer's legal obligation to provide pertinent financial information to a consumer with a consumer's legal right to be protected from abusive communications from debt collectors. Specifically, the Bulletin elaborates on servicers' obligations to provide periodic statements to borrowers who have exercised their right under the FDCPA, directing debt collectors to communicate only with their legal counsel and barring debt collectors from communicating with them directly (a "cease communication" request pursuant to 15 U.S.C. 1692c(c)). Section 805(c) of the FDCPA generally prohibits debt collectors from communicating with consumers regarding a debt after having received a written "cease communication" request from the borrower or their attorney. 15 U.S.C. § 1692c(c).

---

[6] 78 FR 10695 (Feb. 14, 2013) (RESPA Servicing Final Rule); 78 FR 10901 (Feb. 14, 2013) (TILA Servicing Final Rule), collectively the 2013 RESPA and TILA Servicing Final Rules. Regulations X and Z implement RESPA and TILA, respectively.

Although the FDCPA grants debtors the "right generally to bar debt collectors from communicating with them. . . the 'cease communication' provision of the FDCPA may make [servicers] uncertain whether it will be liable under the FDCPA for carrying out certain communications required by the servicing rules." CFPB Bulletin 2013-12,  p. 6.  To resolve this inherent confusion, the CFPB ultimately concludes that "a servicer acting as a debt collector would **not** be liable under the FDCPA for complying with [the requirement to send a periodic statement] despite a consumer's 'cease communication' request. [This] disclosure is specifically mandated by the [Dodd-Frank Act]. . . and the CFPB believes that [this] notice provides useful information to consumers regardless of their collections status." Id. at 7.

In other words, it is permissible for a loan servicer to send monthly mortgage statements directly to the borrower despite a consumer's formal request to cease communications under 15 U.S.C. § 1692c(c). Despite the Notice of Appearance not being a proper "cease communication" request as discussed above, Defendant sent the Mortgage Statements directly to the notice address listed in the mortgage and the same were in compliance with the guidelines as established in Regulation X, 12 C.F.R. § 1026.41. As such, the Mortgage Statements, as a matter of law, cannot form the basis of an FDCPA violation. Thus, Count III (the FDCPA Count) as it relates to the Mortgage Statement must be dismissed with prejudice.

With regard to the FCCPA violations alleged in Counts I and II, this Court can apply the same analysis utilized for interpretation of the FDCPA. It is well settled that all elucidations of the FCCPA should be in line with the FDCPA, including circumstances where the FCCPA and its precedent are silent. Fla. Stat. §§ 559.552 and 559.77(5). Accordingly, rules interpreting and implementing the FDCPA are crucial in applying the FCCPA. Kelliher v. Nat'l Target Bank, 826 F. Supp. 2d 1324 (M.D. Fla. 2011). Therefore, because the FCCPA does not incorporate a resolution between a servicer's legal obligations to communicate with a consumer (under both

1079293.1

federal and Florida law) and the effect of a consumer's "cease communication" request or notification from legal counsel, the CFPB clarifications will apply where the FCCPA is silent. As such, the Mortgage Statements cannot be FCCPA violations as well, and thus Counts I and II should be dismissed with prejudice.

### c. The Mortgage Statements are not Communications to Collect a Debt

Notwithstanding the CFPB's position that periodic statements are permissible communications, the Mortgage Statements are not otherwise violations because they are not "communications" as described by the FCCPA. In fact, in order to trigger a violation of the FCCPA or the FDCPA, the communication at issue must be made in connection with the collection of a debt. As such, not all communications made to a debtor regarding a debt are made for collection purposes. Thus, the common sense question simply becomes whether the communication at issue is purely debt collection, and the Statements do not fall into that category.

While there is no bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of a debt, most courts have looked to the following factors: (1) the demand, or absence of demand, for payment in the communication; (2) the nature of the relationship between the parties; (3) the purpose and context of the communication as either informational or demanding; and (4) whether the communication is mandated by state or federal law. See Gburek v. Litton Loan Servicing, 614 F.3d 380 (7th Cir. 2010).

The United States District Court for the Middle District of Florida has had one opportunity to determine if and when a periodic statement constitutes a communication with respect to the collection of a debt in violation of the FDCPA and the FCCPA. Kelliher, 826 F. Supp. 2d at 1324 (M.D. Fla. 2011). In Kelliher, this court explained that if a periodic statement

1079293.1

is confined to the information required by RESPA and TILA, it will not be considered a "communication" for purposes of the FDCPA or the FCCPA. Id. In Kelliher, the defendant sent multiple periodic statements to the borrower, and each statement became increasingly demanding through the additional debt collection language included in the "Important Messages" section therein. Id. Because the periodic statements sent to the debtor in Kelliher contained additional language that was increasingly demanding and beyond the scope of the information required by RESPA and TILA, they were considered to be debt collection. Id.

Here, unlike the periodic statements sent in Kelliher, the Mortgage Statements sent to Plaintiffs mirror the requirements set forth by RESPA and TILA and do not include any additional demand language. ECF No. 2, Exhibits B, C, D, E, and F. Specifically, Regulation X requires that periodic statements include: (1) amount due, (2) explanation of amount due, (3) past payment breakdown, (4) transaction activity, (5) partial payment information, (6) contact information, (7) account information, and (8) delinquency information. 12 CFR § 1026.41(d). Moreover, the Complaint fails to allege that the Mortgage Statements contained demanding or abusive language or included any information outside the requirements of RESPA and TILA. Yet, this deficiency cannot be cured by amending the Complaint, as the face of the Mortgage Statements clearly indicate that the only information included therein is mandated by RESPA and TILA. Particularly, none of the Mortgage Statements at issue contained any collection language in the important messages section. Because the Mortgage Statements do not provide any additional information outside the enumerated categories of the federal statutes, they fall squarely into the realm of "permissible communications" as defined by this Court in Kelliher, and therefore, Counts I, II, and III should be dismissed with prejudice as they relate to the Mortgage Statements. Id.

2.      Counts I, II, and III fail to state a cause of action as to the Telephone Calls

Part of Counts I, II, and III are based on the allegation that Defendant placed approximately two (2) calls per week to Plaintiff Wolhuter's cell phone after the Notice of Appearance was filed in the Foreclosure Action (the "Telephone Calls").  See Compl., ¶¶ 59, 67, and 73.   For the reasons described below, Defendant maintains that the Telephone Calls cannot form the basis of an FCCPA and/or FDCPA violation, and therefore the same must be dismissed with prejudice.

a.  *The Notice of Appearance is Insufficient to Place Defendant on Notice that Plaintiff was Represented by Counsel*

As discussed above,[7] the Notice of Appearance was insufficient to establish the requisite notice of attorney representation to trigger violations of Fla. Stat. § 559.72(18) and 15 U.S.C. § 1692c(a)(2).   Therefore, based on the analysis above, Counts I, II, and III based on the Telephone Calls being made to a represented party must be dismissed with prejudice.

b.  *The Telephone Calls Cannot State a Cause of Action for Frequency*[8]

Count II alleges that Carrington violated Fla. Stat. § 559.72(7) by contacting Wolhuter with such frequency to abuse and harass her.   Compl., ¶62.   In support of this allegation, Plaintiffs state that Carrington called Wolhuter two (2) times a week for two (2) years, which amounts to at least eighty-eight phone calls.   Compl., ¶¶59 and 77-78.   Critically, however, the Plaintiffs fail to allege a single fact regarding the purpose of such calls.

Fla. Stat. § 559.72(7) states in collecting consumer debts no person shall:

> Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to

---

[7] See the case authority and analysis in Section IV(A)(1)(a), *infra*.
[8] Carrington incorporates by reference the arguments and authorities contained in Section II(B) of BANA's Motion to Dismiss regarding how the frequency of calls in this matter cannot state a cause of action under Florida law.

abuse or harass the debtor or any member of her or his family.   Fla. Stat. §§ 559.72(7).

In determining whether a violation of this statute has been committed, courts must look to the purpose of the creditor's calls.  Story v. J.M. Fields, Inc., 343 So. 2d 675, 677 (Fla. Dist. Ct. App.CA 1977).  In Story, the First District Court of Appeal elaborately set forth why the purpose of the calls must be established:

> Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation.  The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed.  Beyond that point communication 'can reasonably be expected to harass the debtor or his family,' because it tends only to exhaust the resisting debtor's will.  If the creditor intends that likely effect, further communication is willful and actionable.

In the instant case, the Plaintiffs have failed to state a single factual allegation as to why Carrington allegedly made the calls and why such calls therefore amounted to harassment.  See generally Compl.  Without these allegations, the Complaint fails as a matter of law and should be dismissed.

    3.      <u>Counts I, II, and III fail to state a cause of action as to the alleged telephone calls to Wolhuter's Mother</u>

As part of the basis of Counts I, II, and III, Plaintiffs allege that Defendant "called Plaintiff Wolhuter's mother in its attempts to collect the Debt," despite knowing Wolhuter was represented by counsel based on the Notice of Appearance.  Compl., ¶¶ 61, 68, 74.  As the Notice of Appearance as discussed above cannot form the basis of knowledge of representation, these Counts must fail on this issue as well.  See Wright, 2015 WL 419618 at *5 (M.D. Fla. Feb. 2, 2015).

Additionally, there is no violation under the FCCPA for disclosing the existence of a debt to a consumer's family member[9], and Plaintiffs have failed to plead any violation under the requisite section under the FDCPA related to contacting third parties.  Thus, these Counts as based on the allegations of calls to Wolhuter's mother must be dismissed with prejudice.

**B.      Counts IV and V - Violations of the TCPA**

Counts IV and V of the Complaint allege violations of the TCPA.  In order to state a cause of action under the TCPA, a Plaintiff must show (1) the Defendant called the Plaintiff's cell phone; (2) using an Automatic Telephone Dialing System ("ATDS"); and (3) without prior express consent.  As the Plaintiffs have failed to meet the elements required by the statute, the claims should be dismissed as discussed below.

*a.      Plaintiffs fail to allege that Carrington used an ATDS*

Carrington incorporates by reference the arguments and authorities contained in Section II(C)(i) of BANA's Motion to Dismiss regarding the insufficiencies of Plaintiffs' Complaint related to the ADTS.

*b.      Plaintiffs fail to all lack of prior express consent*

Plaintiffs' TCPA claims should also be dismissed as they fail to properly plead that Wolhuter did not give Defendant consent to call her cell phone.  Plaintiffs include two allegations in their Complaint regarding the alleged lack of consent:  (1) Paragraph 28 - Defendant did not possess Wolhuter's prior express consent; and (2) Paragraph 29 – If Defendant did have prior express consent, such consent was revoked by the filing of the Notice of Appearance in the Foreclosure Action.  These allegations completely contradict and negate each

---

[9] Fla. Stat. § 559.72(5) permits information regarding the debt to be disclosed to a debtor's family member.

other, and Plaintiffs should be required to specifically plead the allegations required to state a claim under the TCPA so the Defendants can respond accordingly.[10]

**C.      Count VI - Declaratory and Injunctive Relief**

Count VI requests this Court to enjoin the Defendants from continuing to collect the debt against Plaintiff Wolhuter, and therefore requests an injunction against the Defendants under the FCCPA, FDCPA, and the TCPA.  Compl., ¶¶ 84 and 85.  These requests should be dismissed as discussed below.

        *b.      The Underlying FCCPA Claims are Without Merit*

Any request for an injunction based on the FCCPA should be dismissed when the Court disposes of the underlying FCCPA claims based on the facts and authority cited above.

        *c.      No Injunction Available under the FDCPA*

The FDCPA does not authorize injunctive relief to private litigants and therefore to the extent the injunction is based on the FDCPA, the same should be dismissed with prejudice.  Berg v. Merchants Ass'n Collection Div., Inc., 586 F. Supp. 2d 1336 (S.D. Fla. Oct. 31, 2008) (citing Sibley v. Fulton DeKalb Collection Service, 677 F. 2d 830, 834 (11th Cir. 1982).

        *d.      The Underlying TCPA Claims are Without Merit*

Any request for an injunction based on the TCPA should be dismissed when the Court disposes of the underlying TCPA claims based on the facts and authority cited above.

---

[10] For instance, if it is the Plaintiffs' contention that express consent was revoked by the filing of the Notice of Appearance, that argument must fail as a matter of law based on this Court's ruling in Wright.  If the filing of a Notice of Appearance cannot provide the Defendants with requisite notice of an attorney's representation regarding the underlying debt, it certainly cannot be so broadly construed to advise the Defendants that the Plaintiff is revoking her express consent for the Defendants to call her cell phone under the TCPA.  In an effort to prime statutory violations, Plaintiffs are stretching the meaning and purpose of a Notice of Appearance filed in a judicial action.  A Notice of Appearance is merely a formality meant to inform the court that a designated attorney will be involved in a specific case. See Florida Rules of Judicial Administration, Rule 2.505. As such, the Notice of Appearance filed by Wolhuter's counsel does not relay any information regarding the underlying debt or contain any indication that Wolhuter was revoking consent for Defendants to call her cell phone.

### V. MOTION TO STRIKE JURY TRIAL DEMAND

The Plaintiffs' Jury Trial Demand should be stricken in accordance with Rule 12(f), Federal Rules of Civil Procedure. As indicated in Paragraph 25 of the Mortgage, Plaintiff expressly and affirmatively waived her right to a trial by jury "in any action, proceeding, claim or counterclaim . . . arising out of or in any way related to this Security Instrument or Note." As the Southern District Court addressed in <u>Foley</u>, the Plaintiff's claims are certainly "related to" to the mortgage loan documents, and therefore the Plaintiff waived her right to a jury trial. <u>See</u> <u>Foley v. Wells Fargo Bank, N.A.</u>, 849 F. Supp. 2d 1345, 1352 (S.D. Fla. 2012) (finding that the jury trial waiver in the mortgage loan documents barred a jury trial on the Plaintiff's TILA claims as the claims were related to the mortgage loan documents).

### VI. CONCLUSION

For the foregoing reasons, Carrington respectfully requests that this Court enter an Order dismissing the Complaint, with prejudice. <u>See</u> <u>generally</u> <u>Irwin v. Miami-Dade County Public Schools</u>, No. 06-23029-CIV 2008 WL 2397622 at *2 (S.D. Fla. June 10, 2008) (dismissal with prejudice is appropriate where re-pleading would be futile).

Respectfully submitted,

McGLINCHEY STAFFORD

<u>/s/ R. Carter Burgess</u>
R. Carter Burgess, Esq.
Florida Bar # 58298
10407 Centurion Parkway N., Suite 200
Jacksonville, FL 32256
(904) 224-4499 (telephone)
(904) 212-1828 (facsimile)
cburgess@mcglinchey.com
ATTORNEYS DEFENDANT CARRINGTON
MORTGAGE SERVICES, LLC

1079293.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished, electronically, through the CM/ECF system, to all parties on the mailing matrix, this 10th day of April, 2015.


/s/ R. Carter Burgess, Esq.
Attorney

1079293.1