**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JILL WOLHUTER, an individual and**
**CHRISTINE HERENDEEN, Trustee for**
**The Estate of Jill Wolhuter,**

      **Plaintiffs,**

**v.**                                                                        **Case No.: 8:15-cv-552-MSS-TBM**

**CARRINGTON MORTGAGE SERVICES,**
**LLC, a foreign Limited Liability Company,**
**and CHRISTIANA TRUST, A DIVISION**
**OF WILMINGTON SAVINGS FUND**
**SOCIETY, FSB, AS TRUSTEE FOR**
**STANWICH MORTGAGE LOAN TRUST,**
**SERIES 2013-1, a foreign corporation,**

           **Defendants.**
_____/

## ORDER

    **THIS CAUSE** comes before the Court for consideration of Defendant Carrington

Mortgage Services, LLC's Motion to Dismiss Amended Complaint (Dkt. 25), Defendant

Christiana Trust's Motion to Dismiss Amended Complaint (Dkt. 52), and Plaintiffs' responses

in opposition thereto (Dkts. 36, 37, 57).  Upon consideration of all relevant filings, case law,

and being otherwise fully advised, the Court **GRANTS in part** and **DENIES in part** Defendants'

motions to dismiss.

### I. BACKGROUND

    Plaintiffs Jill Wolhuter and Christine Herendeen, Trustee for the Estate of Jill Wolhuter,

brought this action against Defendants, Carrington Mortgage Services, LLC ("CMS") and

Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich

Mortgage Loan Trust Series 2013-1 ("Trust"), alleging that Defendants' actions in attempting to collect Wolhuter's mortgage debt violated federal and state consumer protection laws.

On June 5, 2007, Wolhuter[1] entered into a mortgage that was serviced by Bank of America, N.A. ("BOA").[2]  She eventually defaulted on the mortgage, and BOA filed a foreclosure action ("the Foreclosure case") against her in the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida.  She retained Leavengood, Dauval, Boyle & Meyer, P.A. to represent her in that case and her attorneys filed a Notice of Appearance on September 12, 2012.  Plaintiffs allege that Wolhuter also retained that firm to represent her with regard to her debts generally.

On or about January 25, 2013, BOA executed a limited Power of Attorney for CMS.  The Power of Attorney authorized CMS to service certain BOA loans, including Wolhuter's mortgage.  Plaintiffs allege that when BOA turned Wolhuter's defaulted mortgage over to CMS for servicing, it advised CMS of the Foreclosure case, advised CMS that Wolhuter was represented by counsel, and provided CMS with her counsel's contact information.  On February 26, 2013, BOA sold and assigned Wolhuter's mortgage to Trust.  Plaintiffs allege that at the time of that sale, BOA advised Trust of the Foreclosure case, advised Trust that Wolhuter was represented by counsel, provided Trust with her counsel's contact information, and moved to substitute Trust as party plaintiff in the Foreclosure case.

On April 30, 2013, the Secretary of Housing and Urban development ("HUD") executed a Limited Power of Attorney appointing CMS as its attorney-in-fact with regard to the sale of non-performing mortgage loans that were purchased from HUD and assigned to Trust, including Wolhuter's mortgage.  On May 16, 2013, CMS and Trust hired Lender Legal Services

---

[1] Plaintiff Herendeen is now the real party in interest to this lawsuit by virtue of Wolhuter's Chapter 7 bankruptcy filing.

[2] BOA initially was named as a defendant in this action.  The Court granted Plaintiffs' Stipulation voluntarily dismissing BOA on May 19, 2015.  (See Dkt. 30).

to replace Florida Foreclosure Attorneys as counsel in the Foreclosure case.  On June 13, 2013, Wolhuter's counsel filed a restated Notice of Appearance in the Foreclosure case to correct a clerk's error.

On June 1, 2014, Trust turned the debt over to Selene Finance, L.P. ("Selene")[3] for servicing.  Plaintiffs allege that Trust advised Selene of the Foreclosure case, advised Selene that Wolhuter was represented by counsel, and provided Selene with counsel's contact information.  On June 11, 2014, Selene sent Wolhuter a letter attempting to collect the debt owed on the mortgage.  On August 18, 2014, Wolhuter's counsel sent a response advising Selene that Wolhuter was represented by counsel and that all future communication with regard to her debt should be directed to counsel rather than Wolhuter.  (See Dkt. 17-1 at 46-47).

Plaintiffs allege that from September 2012 until the filing of this case in March 2015, Defendants repeatedly communicated with Wolhuter's counsel regarding the foreclosure litigation.  Plaintiffs contend that this correspondence and the two Notices of Appearance in the Foreclosure case show that Defendants possessed actual knowledge that Wolhuter was represented by counsel.  Yet, despite this knowledge, Plaintiffs allege that Defendants continued to contact her in writing and by telephone in an attempt to collect the mortgage debt. Plaintiffs allege that Defendants' actions constitute violations of Wolhuter's rights under the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes ("FCCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

Defendants move to dismiss each of Plaintiffs' claims for failure to state a claim for which relief may be granted.

---

[3] Selene was added as a defendant in the Amended Complaint.  On August 27, 2015, Plaintiffs filed a Notice of Settlement with Selene.  (See Dkt. 61)  The Court entered an Order dismissing Selene from the action on September 1, 2015.  (See Dkt. 62).

## II. LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one.  Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983).  A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do."  Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S.Ct. at 1964-65).

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Quality Foods, 711 F.2d at 994-95.  However, the court should not assume that the plaintiff can prove facts that were not alleged.  Id.  Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III. DISCUSSION

### A. FCCPA and FDCPA Claims

Congress enacted the FDCPA to prohibit harassing or deceptive conduct in the collection of a debt.  See 15 U.S.C. §§ 1692d, 1692e.  The FCCPA is "a Florida state analogue to the federal FDCPA."  Oppenheimer v. I.C. Sys., Inc., 627 F.3d 833, 836 (11th Cir. 2010).

Accordingly, the FCCPA is "construed in accordance with the FDCPA." Schmidt v. Synergentic Commc'ns, Inc., 2015 WL 248635, at *2 (M.D. Fla. Jan. 20, 2015) (citation omitted).

### 1. Count One

In Count One of the Amended Complaint, Plaintiffs allege that CMS[4] violated Section 559.72(7) of the FCCPA by attempting to collect Wolhuter's debt through means that were reasonably expected to abuse or harass her.  Section 559.72(7) provides that "[i]n collecting consumer debts, no person shall … [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

Plaintiffs allege that CMS violated section 559.72(7) by: (1) calling Wolhuter's cellular telephone two times a week, using either an automatic telephone dialing system ("ATDS") or an artificial or pre-recorded voice ("APV"); (2) calling Wolhuter's mother on August 7, 2013 to advise her of the debt and request Wolhuter's contact information; (3) sending Wolhuter nine monthly mortgage statements in an attempt to collect the debt; and (4) sending Wolhuter three letters concerning her account in an attempt to collect the debt.

### a. Volume and Frequency of Calls

With respect to the frequency of the calls to Wolhuter, CMS contends that, as a matter of law, two calls per week is insufficient to constitute "harassment" within the meaning of the FCCPA.  CMS also argues that Plaintiffs have failed to state a claim because they do not allege any facts regarding the purpose of the calls.

---

[4] Plaintiffs' allegations as they relate to Trust are that as the owner of the mortgage, Trust is vicariously liable for CMS's conduct in attempting to collect the debt.  Because its liability hinges upon CMS's liability, Trust has adopted each of the arguments set forth in CMS's motion and memoranda of law.  For the sake of clarity, the Court's analysis primarily focuses on the actions of CMS.

Although there is no definitive threshold for determining what frequency and volume of calls are necessary to violate the FCCPA, courts generally have held that one or two phone calls per day are not sufficient to violate the FDCPA or its state analogues, absent evidence of other egregious conduct associated with the calls.  See, e.g., Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (acknowledging that 57 calls over a 20-day period was "somewhat high," but concluding, as a matter of law, that defendant's conduct was not a violation of the FDCPA where defendant left a total of six messages, made no more than seven calls in a single day, did not call back the same day after leaving a message, and did not repeatedly make calls after being asked not to); Arteaga v. Asset Acceptance, LLC, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010) (concluding that "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates the FDCPA); Katz v. Capital One, 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010) (concluding that two calls per day did not constitute harassment as a matter of law and were insufficient to raise a triable issue of fact if not supported by any indicia of an unacceptable pattern of calls, such as being placed back-to-back, at inconvenient times, after plaintiff asked defendant to stop calling, or immediately after plaintiff hung up).

The Court agrees with CMS that, as a matter of law, two calls per week is insufficient to constitute a violation of the FDCPA and FCCPA in the absence of allegations that the calls were made in a harassing nature or pattern, e.g., calls being made during overnight or early morning hours.  See Brandt v. I.C. Sys., Inc., 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) ("Courts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'") (quoting Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004)).  Plaintiffs have not plead any facts

alleging a harassing pattern of calls.  The Court thus finds that their claims regarding the volume of calls are not actionable.

Similarly, Plaintiffs allege only a single call to Wolhuter's mother.  As a matter of law, the Court concludes this call is insufficient to constitute a violation of the FDCPA and FCCPA.

### b.  Mortgage Statements and Letters

CMS argues that sending nine mortgage statements and three letters regarding Wolhuter's account cannot form the basis of an FCCPA violation because the statements and letters were not communications to collect a debt.

The Court finds there are factual issues involving some of the communications to Wolhuter that preclude dismissing Plaintiffs' claims at present.  As CMS acknowledges in its motion, "there is no bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of a debt," and courts have considered a variety of factors in making such determinations.  (Dkt. 25 at 8)  Determining whether the mortgage statements and letters sent to Wolhuter were communications to collect a debt requires a fact-specific inquiry that is not appropriate for resolution at the motion to dismiss stage.  At this stage, the Court finds the allegations in the Amended Complaint sufficient to state a claim under Section 559.72(7).

Accordingly, with respect to Count I, the Court concludes Plaintiffs' allegations regarding the mortgage statements and letters are sufficient to withstand the motion to dismiss, but the allegations regarding the telephone calls are not.

### 2.  Counts Two and Three

In Counts Two and Three of the Amended Complaint, Plaintiffs assert claims under the FCCPA and the FDCPA on the basis that CMS intentionally and repeatedly communicated with

7

Wolhuter regarding her mortgage debt even after it had notice that she was represented by legal counsel.

The FDCPA provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."   15 U.S.C. § 1692c(a)(2).   The corresponding provision of the FCCPA is substantially identical.  See Fla. Stat. § 559.72(18).

As set forth above, Plaintiffs allege that BOA was put on notice that Wolhuter was represented by counsel when her counsel filed a Notice of Appearance in the Foreclosure case on September 12, 2012.  CMS was not a party in the Foreclosure case, but Plaintiffs allege that BOA gave CMS notice that Wolhuter was represented by counsel when BOA gave CMS its power of attorney to collect on the mortgage debt.  Plaintiffs contend that CMS demonstrated actual knowledge that she was represented by counsel when it, along with Trust, was involved in replacing counsel in the Foreclosure case with new counsel.   Additionally, CMS communicated with Wolhuter's counsel on several occasions during the course of the foreclosure litigation.  Finally, Plaintiffs contend that CMS received a notice of her Chapter 7 filing from the bankruptcy court and that the notice listed her counsel.  Yet, Plaintiffs allege that CMS continued to contact Wolhuter directly about her debt, in spite of this knowledge.

CMS counters that the notice of appearance in the Foreclosure case was insufficient to adequately advise CMS: (1) that Wolhuter's counsel was representing her not only in the foreclosure case, but also with regard to the underlying debt, and (2) that CMS should send the monthly mortgage statements to her counsel instead of communicating with her directly.  In

support of its argument, CMS relies upon Wright v. Select Portfolio Servicing, Inc., 2015 WL 419618 (M.D. Fla. Feb. 2, 2015), and Nordwall v. PNC Mortgage, 2015 WL 4095350 (M.D. Fla. July 7, 2015), two recent decisions determining that a notice of appearance in a foreclosure case is insufficient to give a debt collector notice that the debtor also is represented by counsel with regard to the underlying debt.

In Wright, the plaintiffs brought FDCPA and FCCPA claims against their loan servicer, Select Portfolio Servicing ("SPS"), for sending plaintiffs three monthly mortgage statements after SPS was aware that they were represented by counsel in a foreclosure action based upon the same mortgage.  2015 WL 419618 at *1.  The plaintiffs filed separate counts based on each of the three monthly statements.  The court dismissed the first of the counts with prejudice, finding that the March 25, 2013 notice of appearance in the foreclosure action "was insufficient as a matter of law to place SPS on notice that the [plaintiffs] were represented by counsel with respect to their debt."  Id. at *5.  The court thus concluded that an August 15, 2013 monthly statement sent directly to the plaintiffs by SPS could not "be in violation of the FDCPA or the FCCPA because it was mailed before SPS was placed on notice that the [plaintiffs] were represented by counsel with respect to the subject debt."  Id.  By contrast, the court denied the motion to dismiss the other two counts for the monthly statements that were mailed to plaintiffs after SPS received a letter from plaintiffs' counsel advising that plaintiffs were represented by counsel specifically with regard to the debt.  Id.

In Nordwall, the court denied PNC Mortgage's ("PNC") motion to dismiss the plaintiff's FDCPA and FCCPA claims for continuing to communicate with her after being put on notice that she was represented by counsel.  2015 WL 4095350 at *3.  The Court ruled that an October 21, 2013 "cease and desist" letter from plaintiff's counsel was sufficient to provide PNC with actual notice that the plaintiff was represented by counsel for the underlying debt.  Id. at *3-4.

9

However, noting that "[a]ctual knowledge is required to prove violations of Fla. Stat. 559.72(18) and 15 U.S.C. § 1692c(a)(2)," The court agreed with PNC "that Plaintiff's counsel's notice of appearance in a separate action does not constitute actual notice of representation for all-debt related activity." Id. at *3.

Based on Wright and Nordwall, the Court concludes as a matter of law that neither the September 12, 2012 Notice of Appearance in the Foreclosure case nor the June 13, 2013 Restated Notice of Appearance was sufficient to put CMS on notice that Wolhuter was represented with respect to the underlying debt and that any communications concerning that debt should be directed to her counsel. Wright and Nordwall demonstrate that it requires more than a notice of appearance in a related proceeding to put a debt collector on notice that a debtor is represented by counsel; the debtor and/or her counsel must send correspondence notifying the debt collector that the debtor also is represented with respect to the debt itself.

CMS was not a party to the foreclosure case, and even if it was aware that Wolhuter was represented by counsel in that case, neither of the notices of appearance was so broad as to put CMS on notice that she was represented with respect to any matter other than the foreclosure case. Notably, Wolhuter provided such notice in its August 18, 2014 letter, advising Selene that she was represented regarding the debt and requesting that no further attempts be made to contact her directly. (See Dkt. 17-1 at Ex. 46) Because Plaintiffs do not allege that a similar letter was provided to CMS, the Court finds that Plaintiffs have failed to sufficiently allege that CMS violated the FDCPA and FCCPA by communicating with Wolhuter despite knowing she was represented by counsel.

Consequently, Counts Two and Three of the Amended Complaint are due to be dismissed.

### B. TCPA Violations

In Counts Four and Five of the Amended Complaint, Plaintiffs allege that CMS and Trust negligently and willfully violated the TCPA by using an ATDS or APV to call Wolhuter's cellular phone without her prior express consent.

The TCPA prohibits the use of an automatic telephone dialing system to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To state a TCPA claim for a violation of 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an ATDS or APV; (3) without the plaintiff's prior express consent. See, e.g., Lee v. Gulf Coast Collection Bureau, Inc., 2014 WL 6978760, *2 (M.D. Fla. Dec. 10, 2014); Wagner v. CLC Resorts & Developments, Inc., 2014 WL 3809130, *2 (M.D. Fla. Aug. 1, 2014).

Plaintiffs allege that from March 2013 through the date of filing, CMS called Wolhuter's cellular telephone approximately two times per day using an ATDS or APV. (Dkt. 17 at ¶ 38) They allege that each of the calls was made in an attempt to collect the debt. (Id. at ¶ 39) Finally, they allege that CMS never possessed Wolhuter's express prior consent to call her cellular telephone to collect the debt. (Id. at ¶ 4)

The Court finds that these allegations, though cursory, are sufficient to plead Plaintiffs' TCPA claims. CMS argues otherwise, noting that Plaintiffs fail to identify the equipment used to make the calls and fail to state whether the equipment had the capacity to store or produce telephone numbers using a number generator. CMS thus contends that Plaintiffs have not sufficiently alleged that the calls were made using an automatic telephone dialing system. However, specific facts about the equipment used to call Wolhuter are facts Plaintiffs would be unlikely to know prior to discovery. The Court finds that any factual questions about whether

the calls were made using an ATDS or APV are more appropriately considered at the summary judgment stage.

### C.  Motion to Strike Jury Demand

In its motion to dismiss, CMS also moves to strike the jury demand in Plaintiffs' Amended Complaint.  CMS contends that the Mortgage includes a provision expressly and affirmatively waiving any right to a jury trial.

Plaintiffs attached to the Amended Complaint a copy of the Motion for Relief from Automatic Stay that was filed by Trust in Wolhuter's Chapter 7 case.  (See Dkt. 17-2 at 3-7)  Attached to that motion is a copy of the Mortgage.  (Id. at 8-21)  Paragraph 21 of the Mortgage provides:

> 21. Jury Trial Waiver.  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Id. at 11.

A party asserting a claim for a violation of the FDCPA or FCCPA has a right to a trial by jury.  Sibley v. Fulton Dekalb Collection Service, 677 F.2d 830, 834 (11th Cir. 1982).  However, a party may waive its right to a jury trial so long as the waiver is knowing and voluntary.  Bakrac, Inc. v. Villager Franchise Systems, Inc., 164 Fed. Appx. 820, 823 (11th Cir. 2006) (citations omitted).

Plaintiffs do not contest whether Wolhuter's waiver of jury trial was knowing and voluntary.  Instead they make three arguments in opposition to the motion to strike.  They argue that CMS has not met its burden of proving waiver because it did not attach a copy of the Mortgage to its motion.  As noted above, however, Plaintiffs included a copy of the Mortgage in the exhibits to the Amended Complaint.  Accordingly, contrary to Plaintiffs' argument, the

Court is able to undertake an analysis of the waiver even though the Mortgage was not attached to the motion to strike.

Plaintiffs also contend that the waiver is unenforceable because the claims in this action do not fall within its scope.  However, this argument has been rejected numerous times in decisions interpreting jury waiver provisions identical to the one in the Mortgage.  In those cases, the courts held that the disputes giving rise to the FDCPA and FCCPA claims "exist[] because of [a] direct relationship with the mortgage which fairly directly related to contractual performance of the mortgage."  Levinson v. Green Tree Servicing, LLC, 2015 WL 1912276, *2 (M.D. Fla. Apr. 27, 2015); see also DeFrancesco v. Veripro Solutions, Inc., 2015 WL 179376, *4 (M.D. Fla. Jan. 14, 2015) (noting that courts have enforced identical jury waiver language in cases involving FDCPA and FCCPA claims); Martorella v. Deutsche Bank Nat'l Trust Co., 2013 WL 1136444, *3 (S.D. Fla. Mar. 18. 2013) (concluding plaintiff's FCCPA claims arose from collection activities for amounts due under the mortgage and thus finding the waiver of jury trial enforceable); Murphy v. Cimarron Mtg. Co., 2007 WL 294229, *2 (M.D. Fla. Jan. 29, 2007) (enforcing waiver with respect to FDCPA and FCCPA claims against mortgagor for improper collection practices).  Similar to those cases, Plaintiffs' claims in this case arise out of Defendants' efforts to collect the debt owed under the Mortgage.  The Court thus finds that these are claims "arising out of or in any way related to" the Mortgage, and they fall within the scope of the waiver.

Finally, Plaintiffs argue that even if Wolhuter knowingly waived her right to a jury trial by signing the Mortgage, CMS cannot invoke the waiver because it was not a party to the Mortgage.  However, the Mortgage includes a provision that: "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower…."  (Dkt. 17-2 at 10)  Both CMS and Trust are "successors and assigns" of BOA, by

virtue of the Power of Attorney for CMS and the sale and assignment of the Mortgage to Trust. Accordingly, the provisions of the Mortgage bind both the Plaintiffs and Defendants.  See Hancock v. Deutsche Bank Nat'l Trust Co., 2006 WL 6319816, * 2 (M.D. Fla. 2006) (finding jury trial waiver provision applicable in plaintiffs' action against mortgagor's assignees).

Based on the foregoing, the Court finds that Plaintiffs' arguments in opposition to the motion to strike are without merit, and the waiver of jury trial is enforceable in this case.

## IV.  CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** as follows:

1. Defendant Carrington Mortgage Services, LLC's Motion to Dismiss Amended Complaint (Dkt. 25) and Defendant Christiana Trust's Motion to Dismiss Amended Complaint (Dkt. 52) are **GRANTED in part and DENIED in part**.

2. The motions are **GRANTED in part and DENIED in part** as to Count One.  The motions are **DENIED** with respect to the mortgage statements and letters, but **GRANTED** with respect to the allegations regarding the phone calls received by Wolhuter.  In the event Plaintiffs wish to amend the Amended Complaint to make factual allegations about the pattern of calls received from Defendants, they shall have fourteen (14) days from the date of this Order to file a Second Amended Complaint.  In accordance with Rule 11, the Amended Complaint should be amended only if Plaintiffs can plead facts sufficient to plausibly allege violations of the FDCPA and FCCPA.

3. The motions are **GRANTED** with respect to Counts Two and Three of the Amended Complaint, which are **DISMISSED with prejudice**.

4. The motions are **DENIED** with respect to Counts Four and Five of the Amended Complaint.

5.  The Court **GRANTS** Defendant Carrington Mortgage Services, LLC's Motion to

Strike Jury Trial Demand. (Dkt. 25)  Plaintiffs' demand for a jury trial is hereby

**STRICKEN**.

**DONE** and **ORDERED** in Tampa, Florida, on this 28th day of October, 2015.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record
All *Pro Se* Parties